**UNITED STATE DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION**

| | | |
|---|---|---|
| NATHAN HICE, | : | Case No. 1:15-cv-534 |
| | : | |
| Plaintiff, | : | |
| | : | Judge Beckwith |
| v. | : | |
| | : | |
| THE DAVID J. JOSEPH COMPANY, | : | |
| | : | **DEFENDANT'S MOTION FOR** |
| Defendant. | : | **SUMMARY JUDGMENT** |

Pursuant to Federal Rule of Civil Procedure 56, Defendant, The David J. Joseph Company, moves for summary judgment on each of Plaintiff's claims. A memorandum in support of this motion is attached.

Respectfully submitted,

 /s/ Patricia Anderson Pryor
Patricia Anderson Pryor (0069545)
Jamie M. Goetz-Anderson (0083562)
Jackson Lewis P.C.
201 E. Fifth Street, 26th Floor
Cincinnati, OH 45202
Telephone: (513) 898-0050
Facsimile:  (513) 898-0051
pryorp@jacksonlewis.com
jamie.goetz-anderson@jacksonlewis.com

*Counsel for Defendant*

## MEMORANDUM IN SUPPORT

### I.     INTRODUCTION

Defendant, The David J. Joseph Company ("DJJ"), respectfully submits that summary judgment is appropriate on Plaintiff Nathan Hice's ("Hice") claims.  This is Hice's second attempt to state a case where none exists.  Hice was a no call-no show on three different days in a roughly six month period.  His termination after the third occurrence and after the Executive Vice President learned he was not paying off personal charges on his company credit card did not breach any public policy or violate the Family and Medical Leave Act.  Hice initially filed a lawsuit against DJJ in the Hamilton County Court of Common Pleas, alleging only a claim for wrongful termination in breach of public policy.  After discovery, including Hice's deposition, DJJ moved for summary judgment.  Hice's claim that his termination breached a public policy because he planned to obtain a civil protection order against a girl he previously dated made no sense.  The decision-maker was not aware of Hice's plan to obtain a civil protection order prior to Hice's termination.  In response to the motion for summary judgment, Hice dismissed his state court action.  DJJ's counterclaim proceeded to judgment in favor of DJJ.  Now Hice has refiled in this Court, again claiming a breach of public policy and adding a new claim under the Family and Medical Leave Act.  Both claims fail as a matter of law both procedurally and substantively.

Summary judgment is appropriate.

### II.    STATEMENT OF FACTS

#### A.    DJJ

DJJ is one of the largest scrap brokers in North America.  (Angotti Decl. ¶ 2)  It employs a team of brokers that buy and sell scrap, both ferrous (iron/steel) and nonferrous metals.  (*Id.*)  Its brokers are required to maintain and communicate up to the minute data on the scrap market, including who is buying or selling scrap and for how much.  (*Id.*)  By maintaining continuous

1

communications, its brokers have real time price quotes, scrap availability and freight rates. (*Id.*) Constant and timely communication is critical to DJJ's success as it moves recycled metals throughout the world. (*Id.*)

### B. Hice Demonstrated Poor Judgment, Twice, and Was on a Last Chance With the Company's Executive Vice-President.

DJJ hired Hice in 2006 as a ferrous broker. (Pl. Dep. 35) In 2007, Hice "nodded off" while driving a company car home from a bar and crashed the company car. (Pl. Dep. 62) He "speedily" fled the scene and the next day falsely reported his car was stolen to both the police and DJJ. (Pl. Dep. 65) DJJ considered termination for these significant performance failings and deception. (Angotti Decl. ¶ 4) But ultimately, DJJ decided to give him a second chance. (*Id.*) It hoped that affording Hice a second chance would help him mature and lead him to become a more dedicated and successful employee. (*Id.*)

Unfortunately, that was not the last issue DJJ had with Hice. In 2011, Hice abruptly quit his employment with DJJ without providing adequate notice. (*Id.* at ¶ 5) Within a few weeks, Hice returned and asked for his job back. (Pl. Dep. 35-36; Angotti Decl. ¶ 5) Neither Rob Angotti, the Executive Vice President for Brokerage and Services, nor Terry Rath, the Vice President, Metals Group, wanted to hire Hice back. (Angotti Decl. ¶ 5) Because they were short staffed, however, they allowed the non-ferrous metals brokerage team (with whom Hice was working at the time) to decide whether to give Hice a third chance. (*Id.*) The team decided to give Hice a third chance because they were short staffed. (Pl. Dep. 90; Rath Decl. ¶ 2; Bonner Decl. ¶ 2) Angotti considered this to be Hice's last chance. Hice was on a very short leash after this. (Angotti Decl. ¶ 5)

2

### C. Hice Racks up Fantasy Football Charges on his Company Credit Card and Does Not Timely Pay off the Charges.

DJJ gave Hice a company credit card to use for business expenses. (Pl. Dep. 52) Hice was required to timely submit and report mileage and other expenses. (Pl. Dep. 58) He was not supposed to use the card for personal expenditures. (Luther Dep. 48; Rath Decl. ¶ 3) He also was not supposed to carry a balance on the card. (*Id.*) In 2013, the finance department notified Terry Rath that Hice was frequently carrying a balance on his card and had personal expenditures which appeared to be gambling related. (Rath Decl. ¶ 3) Hice admitted he was placing fantasy football charges on his company credit card. (Pl. Dep. 392) Rath talked to Hice about these issues. (Pl. Dep. 56; Rath Decl. ¶ 3)

### D. Hice is Not Responsive to His Manager and Customers.

A critical part of Hice's job was responsiveness. (Pl. Dep. 44, 60) Hice understood that he was required to notify his manager as soon as possible if he was not able to work a day. (Pl. Dep. 58) He understood that failing to report to work without telling someone could result in his termination. (Pl. Dep. 59) When Hice was not on the road, he was required to be in the office. (Bonner Decl. ¶ 5; Luther Dep. 13-14)

In 2013, Hice had several days where he disappeared and failed to call in or otherwise be responsive to the office. (Bonner Decl. ¶ 5) The first was on February 13. (*Id.*) His supervisor, Mark Bonner, and Karen Luther in Human Resources tried to reach him, but he did not respond to anyone until after 3 p.m. (Bonner Decl. ¶ 6; Luther Dep. 43-44, 70)

The second incident was on June 20. Hice had called off work on June 19, 2013, at 6:38 in the morning claiming that he had personal matters to which he needed to attend. (Pl. Dep. Ex. 17) But he did not request time off on June 20. He failed to appear for work on June 20 and failed to notify anyone until 2:43 p.m. (Pl. Dep. Ex 18; Bonner Decl. ¶ 7) Karen Luther was

3

expecting him at a photo shoot. (Pl. Dep. 169) Hice claimed that he had been up with someone who had been throwing up blood. (Hice was not sure who this was during his deposition) (Pl. Dep. 174)

Terry Rath counseled Hice about this misconduct and told Hice that he missed out on a promotion opportunity because of his missing work without notice. (Pl. Dep. 289)

Then on August 23, 2013, Hice was once again missing in action. Mark Bonner tried to reach him with no response. (Bonner Decl. ¶ 9) Hice failed to respond until 3:48 p.m. that day, when he sent Bonner an email in which he explained "today I had some pressing issues that I needed to deal with." (Pl. Dep. Ex. 43, 44) Bonner had had enough. Hice was not communicating with him, was not being responsive to customers, was not timely writing up sales and purchases, and was not making good purchases, resulting in much lower margins than the other traders. (Bonner Decl. ¶ 9)

On Monday, August 26, Bonner went to Karen Luther's office to discuss termination for Hice who had developed a pattern of unresponsiveness during work days without advance warning. (Bonner Decl. ¶ 9)

### E. Hice Reports to Work on Monday and Claims He Missed Work Friday Because He Was Planning to Get a Civil Protection Order Against a Former Girlfriend.

On that same day, Hice went to Karen Luther's office to tell her that he planned to get a civil protection order against a girl he had been seeing. (Pl. Dep. 317) He claimed that was why he did not report to work on Friday. (Luther Dep. 60) He did not explain why he had not notified DJJ of his absence prior to the end of the day. (Luther Dep. 61) He also did not claim to have any medical condition or request any leave. (Luther Decl. ¶ 7-9)

4

### F. Rob Angotti Terminates Plaintiff.

On Tuesday, August 27, Rob Angotti overheard Mark Bonner and Terry Rath discussing Hice's performance issues. (Angotti Decl. ¶ 7) This was the first time Angotti had heard that Hice had been missing in action and not responsive on any day, let alone multiple days. (*Id.*) It was also the first time he learned Hice was not timely paying off his company credit card. (*Id.*) Angotti made the decision to terminate Hice's employment. (*Id.* at ¶ 8) Based on Hice's history, the fact that there were *any* performance issues was enough to finally sever the relationship. (*Id.* at ¶ 9) Angotti did not ask for input from Bonner or Rath. (Bonner Decl. ¶ 10) Angotti did not know anything about Hice's plans to get a protection order. (Angotti Decl. ¶ 10) Angotti was not aware that Hice had any medical condition. (Angotti Decl. ¶ 11) All he knew was this employee – who he did not want to rehire to begin with and who was on a very short leash with him because of his prior transgressions – was disappearing and not being responsive during the work day. (*Id.* at ¶ 7, 10)

## III. PROCEDURAL HISTORY

Hice originally filed a lawsuit against DJJ in the Hamilton County, Ohio Court of Common Pleas in February 2014, in which he alleged a single claim for wrongful termination in violation of public policy (the "State Court Action"). (Pryor Decl. ¶2, Ex. A) DJJ filed counterclaims against Hice in the State Court Action for issues relating to his termination, including Hice's refusal to return to DJJ the company-owned iPad and iPhone upon Hice's termination and Hice's failure to reimburse DJJ for the personal charges he had put on his company credit card. (Pryor Decl. ¶4, Ex. B)

At the end of the discovery period in the State Court Action, on December 30, 2014, DJJ filed a motion for summary judgment on Hice's wrongful termination claim and on its counterclaims against Hice. (Pryor Decl. ¶5) In response to DJJ's motion for summary

5

judgment, Hice unilaterally dismissed his wrongful termination claim. (Pryor Decl. ¶6, Ex. C) Thereafter, the Court of Common Pleas granted DJJ's motion for summary judgment as to DJJ's counterclaims, and on March 30, 2015, entered judgment in favor of DJJ in the amount of $1,904.00, plus interest and costs. (Pryor Decl. ¶¶7-8, Exs. D, E, F) Hice did not appeal from that judgment. (Pryor Decl. ¶9)

On August 14, 2015, Hice filed the instant lawsuit against DJJ. (*See* Doc. #1, Complaint.) Hice now alleges two claims relating to his termination: A claim for wrongful termination in violation of public policy and a claim for violation of the FMLA. (*See id.*) Based on the undisputed facts already established in the record, however, all of Hice's claims fail as a matter of law and summary judgment is appropriate.

## IV. ARGUMENT

### G. Hice Waived His Claims By Not Asserting And Litigating Them In The State Court Action.

Hice's claims fail both procedurally and substantively. The claims asserted by Hice in this action were compulsory counterclaims in the State Court Action. As a result, Hice was required to assert and resolve them in that case. He did not do so, and he therefore waived the right to pursue them in this (or any other) action. Summary judgment is proper.

Ohio Civil Rule 13(A) governs compulsory counterclaims and provides, in pertinent part, that: "A pleading shall state as a counterclaim any claim which at the time of serving the pleading the pleader has against any opposing party, if it arises out of the transaction or occurrence that is the subject matter of the opposing party's claim and does not require for its adjudication the presence of third parties of whom the court cannot acquire jurisdiction."[1] Ohio

---

[1] Because the initial action was in Ohio state court, Ohio Civil Rule 13(A) applies. *See* 3-13 Moore's Federal Practice – Civil §13.14 ("The [compulsory counterclaim] bar also may apply to compulsory counterclaims that should have been brought in an initial state court action that a

Civ. R. 13(A). In determining whether claims arise out of the same "transaction or occurrence" for purposes of Rule 13, courts typically utilize the logical relation test; that is, a counterclaim is compulsory if it "is logically related to the opposing party's claim where separate trials on each of their respective claims would involve a substantial duplication of effort and time by the parties and the courts." *Rettig Enterprises, Inc. v. Koehler*, 68 Ohio St. 3d 274, 278 (Ohio 1993) (quoting Staff Notes (1970) to Civ. R. 13). As the Ohio Supreme Court has explained, "multiple claims are compulsory counterclaims where they 'involve many of the same factual issues, or the same factual and legal issues, or where they are offshoots of the same basic controversy between the parties.'" *Id.* at 279 (internal citation omitted).

In the State Court Action, Hice filed a complaint alleging a claim for wrongful termination in violation of public policy. (Pryor Decl. Ex. A) That claim arose out of Hice's August 2013 termination of employment from DJJ. (*See id.*) DJJ, in turn, asserted counterclaims for conversion and unjust enrichment in the State Court Action. (Pryor Decl. Ex. B) DJJ's counterclaims both arose out of Hice's termination, including Hice's failure to pay personal expenses he had charged to his company credit card (one of the reasons underlying his termination), and Hice's failure to return his company iPad and iPhone upon his termination. (*See id.*) At that point, any claims that Hice had relating to his termination became compulsory counterclaims to DJJ's counterclaim and were required to be asserted in the State Court Action. Hice never asserted an FMLA claim, and dismissed his wrongful termination claim. (*See* Pryor

---

party now seeks to raise in a subsequent federal court action. In that event, however, the guarantees of full faith and credit require a federal court to afford a state court judgment the same preclusive effect it would have in the courts of that state. Accordingly, the effect in subsequent federal litigation of the failure to raise a claim in state court is governed by the state court's compulsory counterclaim rule, not by Rule 13."). Regardless, even if the Court chooses to apply Federal Rule of Civil Procedure 13, the result would be the same because Federal Rule of Civil Procedure 13(a) is identical to Ohio Civil Rule 13(A) in all relevant respects. *See* Fed. R. Civ. P. 13(a); Ohio Civ. R. 13(A).

Decl. Exs. A, C) When judgment was entered on DJJ's counterclaims in the State Court Action, any claims Hice had relating to his termination were thereafter barred.

The Ohio Supreme Court faced a nearly-identical situation in *Rettig Enterprises, Inc. v. Koehler*, and the Court's decision in that case is controlling. 68 Ohio St. 3d 274 (Ohio 1993). *Rettig* actually consisted of three separate lawsuits. Initially, the plaintiffs sued the defendants relating to a transaction between the parties to purchase a retail store (Rettig I). *Id.* at 277. The parties settled Rettig I. *Id.* A few months after the settlement in Rettig I, the plaintiffs sued the defendants again (Rettig II), this time asserting claims arising from the settlement of Rettig I. *Id.* The defendants filed counterclaims against the plaintiffs in Rettig II, which also related to the settlement of Rettig I. *Id.* The plaintiffs later sought to voluntarily dismiss their claims in Rettig II. *Id.* Despite the defendants' opposition, the trial court nonetheless permitted the plaintiffs to dismiss their claims in Rettig II without prejudice. *Id.* The defendants continued to pursue their counterclaims in Rettig II, and judgment was entered in their favor. *Id.* Shortly thereafter, the plaintiffs filed a new case (Rettig III) in which they alleged the same or similar claims against the defendants relating to the settlement of Rettig I. *Id.*

The defendants in Rettig III moved for summary judgment, alleging that the plaintiffs were barred from pursuing their claims under Rule 13(A). *Id.* The Ohio Supreme Court agreed. The Court explained that:

> It makes no difference to the application of Civ.R.13(A) that the opposing claim in the earlier action was a counterclaim rather than a complaint or that the present claim was originally filed as a complaint in the earlier action and dismissed without prejudice after the defendant filed its counterclaim. . . . Civ. R. 13(A) requires all existing claims between opposing parties that arise out of the same transaction or occurrence to be litigated in a single lawsuit, regardless of which party initiates the lawsuit.

*Id.* at 277-278.

8

The Ohio Supreme Court agreed with the defendants that, under these circumstances, the claims asserted by the plaintiffs in Rettig III were actually compulsory counterclaims to the defendants' counterclaims in Rettig II, and thus should have been brought in Rettig II. *Id.* at 278-279. The Court held that, even though the trial court dismissed the plaintiffs' claims in Rettig II without prejudice, the plaintiffs' failure to litigate their claims in Rettig II resulted in their waiver of those claims. *Id.* The plaintiffs were therefore barred from bringing those claims in Rettig III (or any other case), and their claims were dismissed on summary judgment. *Id.*

Here, DJJ's counterclaims in the State Court Action and Hice's claims in this case all arise from Hice's August 2013 termination from DJJ. (*See* Complaint; Pryor Decl. Ex. B) In other words, they are "offshoots of the same basic controversy between the parties." *See Rettig,* 68 Ohio St. 3d at 279. As such, Hice's claims in this case were compulsory counterclaims to DJJ's counterclaims in the State Court Action. Hice, therefore, was required to assert his claims in the State Court Action. Like the plaintiffs' claims in *Rettig*, Hice's claims are barred because he waived them by failing to maintain them as compulsory counterclaims in the State Court Action. Accordingly, Hice's claims must be dismissed.

### H. Hice's Claims Fail as a Matter of Law.

Even if Hice's claims were not barred, they nonetheless fail as a matter of law. There are no genuine issues of fact, and Hice cannot establish that his termination breached any public policy or violated the FMLA.

#### 1. Summary Judgment is Appropriate on Hice's Breach of Public Policy Claim.

Hice's claim for wrongful termination in violation of public policy fails as a matter of law. In order to establish that an employer wrongfully discharged an employee in violation of public policy, a plaintiff must establish (1) a clear public policy existed and was manifested in a

9

state or federal constitution, statute or administrative regulation, or in the common law (the clarity element); (2) dismissing employees under circumstances like those involved in the plaintiff's dismissal would jeopardize the public policy (the jeopardy element); (3) plaintiff's dismissal was motivated by conduct related to the public policy (the causation element); and (4) the employer lacked an overriding legitimate business justification for the dismissal (the overriding justification element). *See Dohme v. Eurand America, Inc.* 130 Ohio St. 3d 168, 171 (Ohio 2011).

Hice cannot establish any of those elements. Hice cannot establish that any public policy was violated. (Pl. Dep. 384-86) Hice must identify the federal or state constitutional provisions, statutes, regulations or common law that support the policy. *Id.* at 172. Hice has not identified a clearly manifested public policy that was breached in this case, or that would be jeopardized by Hice's termination.

Hice also cannot establish that his termination was motivated by conduct related to the public policy. Rob Angotti made the decision. It is undisputed Angotti had no knowledge of Hice's intention to seek a protection order or other conduct related to any public policy. (Angotti Decl. ¶ 10) Hice cannot establish that his termination was motivated by any unlawful motive where the decision-maker was unaware of the asserted public policy conduct. *See Wilkes v. McBee Systems Inc.*, 1999 U.S. App. LEXIS 9267, *17 (6th Cir. May 12, 1999).

Finally, summary judgment is appropriate because Hice cannot establish that DJJ lacked an overriding legitimate business justification for the dismissal. *Id.* at *17-18. Hice had had three days where he no-called no-showed (and failed to timely respond to his manager) in an approximately 6-month period. (Bonner Decl. ¶ 5; Angotti Decl. ¶ 7) He had been charging personal expenses to his company credit card and had not been paying off the balance. (Rath

10

Decl. ¶ 3; Angotti Decl. ¶ 7) And he was not timely resolving downgrades with his customers. (Angotti Decl. ¶ 7) Hice cannot establish that DJJ lacked an overriding legitimate business justification for Hice's dismissal. Summary judgment is appropriate as a matter of law.

### 2. Summary Judgment is Appropriate on Hice's FMLA Claims.

It is not clear from Hice's Complaint whether he is asserting a claim for FMLA interference or a claim for FMLA retaliation. (*See* Complaint.) Regardless, based on the undisputed facts, both claims fail as a matter of law and summary judgment is appropriate.

#### a. Hice Cannot Establish a Claim for FMLA Interference.

In order to establish a claim for FMLA interference, Hice must demonstrate that: (1) he was an eligible employee; (2) DJJ was an employer as defined under the FMLA; (3) he was entitled to leave under the FMLA; (4) he gave DJJ notice of his intention to take FMLA leave; and (5) DJJ denied him FMLA benefits to which he was entitled. *See Walton v. Ford Motor Co.*, 424 F.3d 481, 485 (6th Cir. 2005). Hice's FMLA interference claim must be dismissed because he cannot establish the third, fourth, and fifth elements of his claim.

First, Hice cannot establish that he was entitled to leave under the FMLA. He has not established that he suffered from a serious health condition, as that term is defined by the FMLA, at the time of his termination (or at any other time relevant to his claims). *See* 29 C.F.R. §825.113(a) ("For purposes of FMLA, *serious health condition* entitling an employee to FMLA leave means an illness, injury, impairment or physical or mental condition that involves inpatient care as defined in §825.114 or continuing treatment by a health care provider as defined in §825.115."). Hice's own medical records, which he produced during his earlier litigation, show that he did not even see a doctor between April 18, 2013 and January 31, 2014. (Pl. Dep. Ex. 60)

Second, the undisputed facts establish that Hice never gave DJJ notice of any intention to take FMLA leave. It is well-established that "nothing in the [FMLA] places a duty on an

employer to affirmatively grant leave without such a request or notice by the employee. Rather, to invoke the protection of the FMLA, *an employee must provide notice <u>and</u> a qualifying reason for requesting the leave.*" *Brohm v. Jh Props.*, 149 F.3d 517, 523 (6th Cir. 1998) (emphasis added). Here, Hice never notified DJJ that he needed time off in connection with a serious health condition. (*See, e.g.*, Pl. Dep. Ex. 43, 44 (in his August 23 email to Bonner, Hice did not mention any medical condition and instead explained only that he had missed work that day because "today I had some pressing issues that I needed to deal with.").) *See also* Bonner Decl. Ex. A. (in a June 19 email to Bonner, Hice stated that he "will not be able to make [sic] into the office today due to personnel matters that I need to attend to.")) These communications were wholly insufficient, as a matter of law, to put DJJ on notice of Hice's need to take time off for a serious health condition.

And finally, because Hice never requested leave under the FMLA, he cannot show that DJJ denied any such leave. In fact, Hice admits that during an August 27 meeting, Terry Rath suggested that Hice take a leave of absence to deal with the issues relating to his ex-girlfriend. (Pl. Dep. 320) Hice declined the offer and conceded that he "wasn't really thinking about that…" (*Id.*)

Under these circumstances, Hice cannot establish a claim for FMLA interference. Summary judgment is proper.

        b.    <u>Hice Cannot Establish a Claim for FMLA Retaliation.</u>

Like his FMLA interference claim, Hice's FMLA retaliation claim also fails as a matter of law. To establish a *prima facie* case of FMLA retaliation, Hice must prove that: (1) he engaged in an activity protected by the FMLA; (2) DJJ knew that he was exercising his FMLA rights; (3) DJJ took an adverse employment action; and (4) there was a causal connection between his protected FMLA activity and the adverse action. *See Hall v. Ohio Bell Tel. Co.*, 529

12

Fed. Appx. 434, 439-440 (6th Cir. 2013). Although DJJ terminated his employment, Hice cannot establish any of the other elements of his *prima facie* case of FMLA retaliation claim.

As described above, Hice never requested to take FMLA leave or otherwise engaged in any activity protected by the FMLA. As a result, DJJ could not have had knowledge that Hice allegedly exercised his FMLA rights. And, finally, there could be no causal connection between Hice's alleged protected FMLA activity and his termination. Even if any of Hice's communications possibly could be considered protected activity under the FMLA (which they cannot), it is undisputed that the decision-maker – Angotti – was not aware of them at the time that he made the decision to terminate Hice's employment. (Angotti Decl. ¶ 11)

Furthermore, even if Hice possibly could establish a *prima facie* case of FMLA retaliation, DJJ has offered a legitimate, non-retaliatory reason for his termination (*see supra*), which Hice cannot show was pretext for unlawful FMLA retaliation. Accordingly, Hice's FMLA retaliation claim fails as a matter of law.

## V.     CONCLUSION

For all of the foregoing reasons, Defendant The David J. Joseph Company respectfully requests that this Court grant its motion and dismiss Plaintiff's lawsuit in its entirety.

Respectfully submitted,

 */s/ Patricia Anderson Pryor*
Patricia Anderson Pryor (0069545)
Jamie M. Goetz-Anderson (0083562)
Jackson Lewis P.C.
201 E. Fifth Street, 26th Floor
Cincinnati, OH 45202
Telephone: (513) 898-0050
Facsimile:  (513) 898-0051
pryorp@jacksonlewis.com
jamie.goetz-anderson@jacksonlewis.com
*Counsel for Defendant*

13

## CERTIFICATE OF SERVICE

    I hereby certify that a true and accurate copy of the foregoing was electronically filed on December 7, 2015, with the Court's CM/EFS system and such system will send electronic notice to counsel of record.

*/s/ Patricia Anderson Pryor*
Patricia Anderson Pryor

4836-3812-7915, v. 1